No. 78,389

Bryan D. Key, *Appellant,* v. Hein, Ebert and Weir, Chtd., a Professional Corporation, *et al., Appellees.*

(960 P.2d 746)

Opinion filed May 29, 1998.

*John B. Gage II*, of The Gage Law Firm, P.C., of Overland Park, argued the cause and was on the briefs for appellant.

*Brian D. Boos*, of Yeretsky & Maher, L.L.C., of Kansas City, Missouri, argued the cause, and *James M. Yeretsky*, of the same firm, was with him on the brief for appellees.

The opinion of the court was delivered by

ALLEGRUCCI, J.: This is a legal malpractice case brought by Bryan Key against William F. Ebert and his law firm, Hein, Ebert, and Weir, Chtd., (Hein, Ebert). The underlying action arose from Key's arrest in connection with a domestic dispute. In the present case, Key alleged that he lost his cause of action for the unlawful arrest as a result of Ebert's negligence and breach of contract in failing to avoid the bar of the statute of limitations. On the motion of Ebert and Hein, Ebert, the district court entered summary judgment in their favor on the ground that Key was not damaged by any failure of Ebert and Hein, Ebert because his arrest had not been unlawful. Key appealed. The case was transferred to this court from the Court of Appeals.

This action was initiated by a petition with two counts, alleging that Key had a viable cause of action for damages for false imprisonment against police, jailers, and the City of Parsons (City) but lost it due to the negligence of Ebert and Hein, Ebert and their breaching an agreement to timely file the false imprisonment claim on Key's behalf. Key alleged that he "would have recovered a collectible judgment in his favor had he not been prevented from bringing suit because of the bar of the statute of limitations."

The district court granted Ebert and Hein, Ebert's motion for summary judgment in a memorandum decision and order of December 1995. The following factual determinations were included in the order under the heading, "Uncontroverted Facts":

"1. Bryan D. Key, Plaintiff, and Roberta Kirkland lived together in October, 1991, with their minor son, David Key.

"2. On July 15, 1991 Roberta Kirkland obtained a temporary order of protection under the Protection from Abuse Act, K.S.A. 60-3101.

"3. Plaintiff was personally served with said temporary order of protection.

"4. Upon being served with the protection order Plaintiff immediately moved in with his mother in Fredonia, Kansas.

"5. Plaintiff had the order of protection dissolved, and moved back in with Roberta Kirkland.

"6. Plaintiff drove to the Parsons police station with Roberta Kirkland and their son on October 3, 1991 to seek the help of the police in resolving a domestic dispute.

"7. Prior to leaving the police station, Ms. Kirkland informed an officer that she had a protective order and requested that Plaintiff be arrested.

"8. Plaintiff's deposition states he told the officers that the protective order was dissolved and that if they would follow him home he would show them the order dissolving the protective order.

"9. Plaintiff was arrested and incarcerated until the next day, October 4, 1991 when his mother posted bail.

"10. October 4, 1991, Ms. Kirkland swore out a Complaint wherein she stated that Plaintiff had violated the restraining order and committed criminal trespass.

"11. A court date was set for Plaintiff to appear on October 17, 1991. At that time the Labette County attorney dismissed the charges against Plaintiff without prejudice.

"12. [Bryan] Key contacted William Ebert, Defendant, in February 1992 and informed him his rights had been violated.

"13. Plaintiff and Defendant met and discussed the case. Thereafter an engagement letter was signed. Then Defendant began making inquiries on Plaintiff's behalf concerning potential claims against the City of Parsons. Next, offers and counteroffers were exchanged between Defendant and counsel for the City of Parsons.

"14. Defendant elected not to file a false imprisonment action (with a one year statute of limitations) in state court, and instead, in October, 1992, and again in January, 1993, informed Plaintiff that the action would be brought in federal court, and that a two year statute of limitations applied.

"15. Plaintiff's expert witness, Professor James W. Jeans, has expressed the opinion that, 'The defendants were negligent in failing to file suit or withdraw from representation before the [false imprisonment] statute of limitations had run.'

"16. Defendant's expert, Arthur E. Palmer, has expressed the opinion that Defendant did not act below the standard of care for lawyers in the community practicing in the civil rights area when he determined not to pursue a false imprisonment claim in the District Court of Labette County, Kansas and elected to bring a claim in Federal Court under 42 U.S.C. § 1983.

"17. In early summer of 1993, Plaintiff requested the case file from Defendant.

"18. On September 29, 1993 Plaintiff's new counsel filed suit on Plaintiff's behalf against the [C]ity of Parsons in state court.

"19. That action was dismissed. In an opinion filed June 27, 1994, the court stated that the correct cause of action in state court was one for false arrest/imprisonment. The one year statute of limitations had run on that action. Further a 42 U.S.C. § 1983 cause of action could not be pursued in state court, with its attendant two-year statute of limitations, because the state remedy was adequate. (A § 1983 claim could have been brought in federal court.) However, the court held that a viable cause of action still existed because negligent hiring and retention of officers and jailers was alleged. A two year statute of limitations is applicable to a negligent hiring or retention action.

"20. In a later opinion dated November 14, 1994 the court dismissed the negligent hiring and retention claim because, 'pursuant to K.S.A. 12-105b(d) the court is without jurisdiction to hear a petition alleging a negligent hiring and supervision claim against the city that was filed before December 16, 1993, and any such petition filed after January 31, 1994, would be time barred.'

"21. Plaintiff never appealed the dismissal of the petition.

"[22]. This case was filed September 26, 1994."

The district court concluded that Key did not have a viable cause of action for false imprisonment in the underlying action. The determinant for that decision was the district court's conclusion that the police had probable cause to arrest Key. Probable cause, according to the district court, was supplied by Kirkland's telling the police that she had a protective order. If the police had probable cause to arrest Key, the district court reasoned, there was no unlawful arrest, which is an essential element of a false imprisonment claim. In this regard, the district court concluded that "there was sufficient probable cause for the arrest of [Key] on October 3, 1991, and that the element of unlawful arrest necessary for a False Imprisonment claim is lacking. This court further finds that without a viable False Imprisonment claim, Plaintiff cannot show damages in the present legal malpractice claim."

In that memorandum decision and order of December 1995, the district court further concluded that, even if probable cause was lacking so that the arrest was unlawful, Key still had no case against Ebert and Hein, Ebert. The district court reasoned that Key's false imprisonment claim could have been prosecuted as a tort claim in state court or as a constitutional tort under the civil rights statute, 42 U.S.C. § 1983 (1994), in federal court. Ebert and Hein, Ebert had not filed a state court action within the 1-year state limitations period. At the time their representation of Key ended, however, a federal action, which has a 2-year limitations period, could still have been timely filed.

Upon consideration of Key's "Motion and Memorandum for a New Trial and, Alternatively to Alter or Amend the Judgment," the district court issued a memorandum decision and order in December 1996 in which it backed away from the alternative rationale of the December 1995 ruling. The district court wrote that under

*Parratt v. Taylor*, 451 U.S. 527, 543-44, 68 L. Ed. 2d 420, 101 S. Ct. 1908 (1981), where a state tort claims procedure would remedy the alleged wrong, the plaintiff cannot state a claim for relief under the federal civil rights statute. The district court, however, reiterated the other basis for its original decision—that Key could not show that he was unlawfully arrested.

As a preliminary matter, the defendants question whether we have jurisdiction to hear this appeal. Defendants argue we do not because Key's notice of appeal does not comply with K.S.A. 60-2103(b). Key filed his notice of appeal pro se. It states in full verbatim:

"TO BILL EBERT, DEFENDANT and BRIAN G. Boos
His attorney of record
   "you and each of you are hereby notified that the plaintiff does hereby appeal to the court of Appeals from the order made this 19th day of DECEMBER 1996.
   "Wherein the court did grant the defendant Memorandom Decision order. And from each and every order entered contary to plaintiff."

The district court's memorandum decision and order, which was dated December 19, 1996, and file-stamped on December 20, 1996, is the ruling on Key's motion for a new trial or to amend the judgment.

In their appellees' brief, Ebert and Hein, Ebert argue that the notice of appeal fails to identify the district court's order of December *1995*, which granted summary judgment to the defendants. Ebert and Hein, Ebert rely on *Anderson v. Scheffler*, 242 Kan. 857, 752 P.2d 667 (1988), for the "fundamental proposition of Kansas appellate procedure that an appellate court only obtains jurisdiction over the rulings identified in the notice of appeal." They represent that this court limited the *Anderson* issues to those contained in a memorandum decision from April 1987, which had been identified in the notice of appeal, and refused to consider issues related to an order granting summary judgment in December 1986, "because appeal of that judgment had not been designated in the notice of appeal."

Key's response is that in appealing the district court's December 1996 ruling on his motion for new trial or alteration of the judgment, he necessarily appealed the December 1995 order granting

summary judgment. He relies on *State v. Walker*, 260 Kan. 803, 806-07, 926 P.2d 218 (1996).

In its consideration of discrepancies between a notice of appeal and issues briefed, this court has rejected entreaties to make the requirements of the notice of appeal technical or burdensome. See, *e.g., Hess v. St. Francis Regional Med. Center*, 254 Kan. 715, 869 P.2d 598 (1994). Its approach has been to use a broad or "liberal construction to secure the just, speedy, and inexpensive determination of every action or proceeding" required by the code of civil procedure. 254 Kan. at 720.

In the present case, a liberal construction of the notice of appeal seems particularly appropriate in that it was not drafted by counsel. The district court's December 1995 memorandum decision and order included a statement of uncontroverted facts and conclusions of law, granted the defendants' motion for summary judgment, assessed costs to the plaintiff, and stated: "The foregoing Memorandum Decision shall serve as the Court's entry of judgment. No further journal entry being required." It is both dated and file-stamped December 20, 1995. On December 28, 1995, Plaintiff's "Motion and Memorandum for a New Trial and, Alternatively, to Alter or Amend the Judgment" was faxed to the district court. It amounts to a motion to reconsider all or nearly all legally significant aspects of the summary judgment. A year passed before the district court filed another memorandum decision and order. It is dated December 19, 1996, and file-stamped December 20, 1996. In it, the district court retracted the alternative ground for entering summary judgment in favor of Ebert and Hein, Ebert—that a federal civil rights action still was available to Key when he severed his attorney-client relationship with Ebert. The district court reaffirmed its decision to enter summary judgment for the defendants on the ground that the police had probable cause to arrest Key.

When Key filed his pro se notice of appeal, he identified the district court's December 1996 memorandum decision and order by date. He also referred to the district court's order "[w]herein the court did grant the defendant Memorandum Decision order." It was, of course, the December 1995 order in which the district court granted defendants' motion for summary judgment. The De-

cember 1996 order pertains to the plaintiff's motion. Thus, using a liberal approach, this court could construe the language of the notice of appeal to include references to both the December 1995 and December 1996 orders. Moreover, although Key did not identify the December 1995 order by date, he included catch-all language in the notice of appeal—"And from each and every order entered [contrary] to plaintiff"—that obviously embraces the entry of summary judgment.

In *Hess*, the final justification offered by the court for entertaining the briefed issues that were not clearly and expressly included in the notice of appeal was that "[t]he appellee does not claim that it was surprised or placed at a disadvantage by the issues appellant briefed." 254 Kan. at 720. In the present case, Ebert and Hein, Ebert assert that they "have been surprised and placed at a disadvantage by being confronted for the first time on appeal with issues not raised by plaintiff in opposition to the summary judgment motion below." This complaint relates to another issue—that of matters raised for the first time on appeal—rather than to the scope of the notice which is required to be given to the other party upon an appeal. Moreover, their complaint is hardly credible. The December 1996 order, which is identified by date in the notice of appeal, and the December 1995 order, which is not, center on the same two issues—whether Key had a federal civil rights action and whether there was probable cause for his arrest. Those same two issues, in particular the latter, dominate this appeal. Thus, we find that the notice of appeal was sufficient to include the issues briefed by Key.

We turn to the merits of Key's appeal. Key ardently argues that the trial court erred in granting summary judgment in favor of the defendants when their supporting memorandum contained factual contentions based on his unfiled deposition. Supreme Court Rule 141 (1997 Kan. Ct. R. Annot. 169) requires the moving party to file a memorandum setting forth uncontroverted contentions of fact with references to supporting documents, including depositions, "contained in the court file and otherwise included in the record." Examination of the defendants' supporting memorandum shows that many of their "Statements of Uncontroverted Fact"

refer to the deposition of Bryan Key. It is asserted by Key that his deposition was never filed with the district court, and an examination of the appearance docket does not show otherwise.

A glance at Key's memorandum in opposition to the motion for summary judgment, however, shows that he, too, referred to his deposition for factual contentions and that he admitted a great many of defendants' contentions. Thus, it appears that his complaint on appeal is strictly technical and, moreover, that he waived his right to complain now by failing to do so at a time when the complaint might have been meaningful. Key defends against the notion of waiver by submitting an affidavit of Key's trial counsel to the effect that he was unaware that defendants had not complied with Rule 141 and, if he had been aware, he "never would have filed the memorandum in opposition to defendants' Motion for Summary Judgment but would have objected to that motion" on that ground. We need not decide the question of waiver.

A thorough examination of the parties' factual contentions discloses that the district court's findings are not based on controverted facts drawn from the unfiled deposition. Only 4 of the district court's 24 numbered paragraphs of "Uncontroverted Facts" were not fashioned directly on the defendants' factual contentions which were admitted by Key. They are Paragraphs 8, 14, 19, and 20.

Paragraph 8 is of no concern on this issue for two reasons—(1) it was adopted by the district court at Key's suggestion rather than as one of the defendants' factual contentions, and (2) it is a recitation of Key's testimony rather than a determination of fact. Defendants' numbered paragraph 11 stated that Roberta Kirkland told police that she had a protective order and wanted Key arrested. Key admitted defendants' numbered paragraph 11 and added that he told police that if they would follow him home he would show them there was no restraining order. Adopting defendants' numbered paragraph 11, which Key admitted, the district court stated in Paragraph 7 that Kirkland told police she had a protective order and requested that Key be arrested. In Paragraph 8, the district court stated: "Plaintiff's deposition states he told the officers that the protective order was dissolved and that if they

would follow him home he would show them the order dissolving the protective order."

Paragraphs 19 and 20 are statements of the district court's rulings in Key's underlying action against Kirkland, the police, and the City. They are of no concern on this issue because they are not based on Key's unfiled deposition.

Paragraph 14 is a bit more complicated. It states: "Defendant elected not to file a false imprisonment action (with a one year statute of limitations) in state court, and instead, in October, 1992, and again in January, 1993, informed Plaintiff that the action would be brought in federal court, and that a two year statute of limitations applied." Defendants' factual contentions stated:

"29. . . . In October 1992 [Bryan] Key again met with Mr. Ebert and according to Mr. Key '. . . [H]e started telling me we were going to take this out of the state courts and put it into federal court, and he says, "We'll have two years." '. . .

"30. [Bryan] Key and Mr. Ebert met again in January 1993. [Bryan] Key says that Mr. Ebert advised him at that time 'Well, I told you we were going to take this out of the state courts and we'll put this into the federal courts,' and he says, 'You will have a two-year statute of limitations.' "

Key's responses to these contentions were as follows:

"29. Admitted. The purported quotation is incorrectly set forth. . . .

"30. Admitted. Additionally, when Mr. Key first met with Mr. Ebert he informed Mr. Ebert that two attorneys had told him that he had two years to file a lawsuit, to which Mr. Ebert replied 'Not for what we're going for.' "

It appears that the last two-thirds of the district court's Paragraph 14, that is, from "in October, 1992" to the end, is based on factual contentions admitted by Key. The first part of Paragraph 14, however, cannot be accounted for by looking at the parties' proposed findings of fact. It states: "Defendant elected not to file a false imprisonment action (with a one year statute of limitations) in state court." This part of Paragraph 14 may be objectionable, but not because it is drawn from a contention based on the unfiled deposition. It is an undisputed fact that Ebert did not file a false imprisonment action on Key's behalf in state court. Whether that failure ought to be characterized as an election is questionable, but the trial court judge's decision to do so cannot be imputed to reliance on the unfiled deposition.

We conclude that none of the district court's findings is based on controverted facts drawn from the unfiled deposition. Thus, the deposition's not being made a part of the court file or the record on appeal would not appear to be material to the outcome. Key would have this court reverse the entry of summary judgment on the ground that the trial court considered defendants' motion for summary judgment despite their having failed to comply with Rule 141, irrespective of harm. We find the failure to be harmless error. See *Tamplin v. Star Lumber & Supply Co.*, 251 Kan. 300, 308, 836 P.2d 1102 (1992).

We next determine if summary judgment was appropriate. In its memorandum decision and order of December 1995, the district court set out the following statement about Key's cause of action and the basis for it:

"This case involves a legal malpractice claim against Defendants, in which Plaintiff alleges that Defendants negligently allowed the statute of limitations to expire on a False Imprisonment claim against the City of Parsons. Any possible False Imprisonment claim would have arisen out of an arrest made on October 3, 1991, when Plaintiff and Roberta Kirkland went to the Police station to seek assistance for a domestice [*sic*] dispute. Plaintiff was arrested when Roberta Kirkland told the police she had a restraining order against Plaintiff, which he was violating. Unbeknownst to the police, the restraining order had been dissolved."

The district court's opinion continued:

"There is a dispute as to whether the police checked the police records to verify the restraining order, or whether they merely accepted the word of Roberta Kirkland as the truth. However, *in viewing the facts most favorable to Plaintiff*, the Court will assume the police merely accepted the words of Roberta Kirkland as the truth when arresting Plaintiff after the couple arrived at the police station in a domestic dispute." (Emphasis added.)

The district court then concluded as a matter of law that Kirkland's word furnished probable cause for the arrest.

In *State v. Mayberry*, 248 Kan. 369, 807 P.2d 86 (1991), this court defined "probable cause" as

"the reasonable belief that a specific crime has been committed and that the defendant committed the crime. It does not require evidence of each element of the crime or evidence to the degree necessary to prove guilt beyond a reasonable doubt. *State v. Abu-Isba*, 235 Kan. 851, 853-54, 685 P.2d 856 (1984). See *State v. Dunn*, 233 Kan. at 414-15; *State v. Lamb*, 209 Kan. 453, 467, 497 P.2d 275

(1972), *rev'd in part on other grounds* 225 Kan. 38, 587 P.2d 861 (1978). Probable cause has been described as ' "[b]its and pieces of information . . . fitted together until a picture is formed which leads a reasonably prudent person to believe a crime has been . . . committed and that evidence of the crime may be found on a particular person or in a place or means of conveyance." ' *State v. Marks*, 231 Kan. 645, 647, 647 P.2d 1292 (1982) (quoting *State v. Morgan*, 222 Kan. 149, 151, 563 P.2d 1056 [1977]). See *State v. Williams*, 229 Kan. 290, 291, 623 P.2d 1334, *reh. denied* 229 Kan. 646, 630 P.2d 694 (1981)." 248 Kan. at 377-78.

The district court did not discuss what the outcome would have been if the police had checked their records to verify the restraining order. Nor did the district court entertain the possibility that the police relied on both a check of their records and the word of Kirkland.

In considering a motion for summary judgment, a district court "is required to resolve all facts and inferences which may reasonably be drawn from the evidence in favor of the party against whom the ruling is sought." *Mitzner v. State Dept. of SRS*, 257 Kan. 258, 260, 891 P.2d 435 (1995). This is what the district court stated it was doing in the present case, but examination of the materials that were before the district court reveals a somewhat different picture.

Among the arguments made by Ebert and Hein, Ebert for summary judgment was that Key could not have prevailed on the underlying false imprisonment claim. Defendants' "Statements of Uncontroverted Fact" includes only the following pertinent paragraph:

"11. As the couple was preparing to leave the police station, Roberta Kirkland shouted out 'I've got a protective order signed by Judge Sell on Mr. Key. . . . I want him arrested.' Thereupon Officer Gofourth, who by that time had been joined by Officer William Abernathie, arrested Mr. Key at Ms. Kirkland's insistence."

With regard to the law, defendants stated: "[W]here probable cause for plaintiff's arrest exists he has no actionable claim for false imprisonment since the making of an arrest based on probable cause constitutes a discretionary function immune from liability pursuant to the Kansas Tort Claims Act, K.S.A. 75-610[1] *et seq.* [Citations omitted.]" Defendants' argument on this issue was in-

tertwined with assertions of fact, which included allusions to a protective order document:

"Officer Gofourth arrested plaintiff at the insistence of Roberta Kirkland, plaintiff's estranged spouse, *based on a facially valid Protection From Abuse Act order pursuant to which Ms. Kirkland demanded that plaintiff be arrested.* Further, the fact that the couple had presented at the police station only minutes before seeking mediation of a domestic dispute clearly gave Officer Gofourth good reason to conclude that an incident violative of a court order had occurred or was about to. This constituted probable cause for plaintiff's arrest. . . . Based on the probable cause supplied by *the facially valid protection order,* Ms. Kirkland's sworn Complaint, and the fact that plaintiff and Ms. Kirkland were then involved in a domestic dispute, Officer Gofourth properly exercised his discretion in determining to arrest plaintiff." (Emphasis added.)

It should be noted that Kirkland's "sworn Complaint" was not prepared until the day after Key's arrest nor did the court find the arresting officer checked for or relied upon a "facially valid protection order."

Key made the following response to Defendants' Paragraph 11:

"11. Admitted. Mr. Key stated to officers Goforth [*sic*] and Abernathy [*sic*] while in his truck with Roberta Kirkland and their child preparatory to leaving the police station and after Roberta Kirkland had stated to said officers that she had a restraining order and wanted Mr. Key arrested, 'Hay [*sic*], there ain't no restraining order. Give me a minute. Follow me down to my house. I'll show you. There is nothing.' Officer Goforth responded by saying 'The only place you're going is jail.' Officer Abernathy said 'Hay. [*sic*] You can't do that just on her word.' to which Officer Goforth replied 'Well, I'm just going to do it anyway.' Officer Goforth then grabbed Mr. Key from behind, pulled Mr. Key's arms up around his neck, dragged him from his truck and slammed him up against the truck. Mr. Key then stated 'Hay [*sic*], there ain't no need for this. I'm not resisting you. All I want you to do is follow me down to the house so I can show you the order.'"

Defendants' reply pointed out that Key's memorandum contained no discussion of their third ground for summary judgment—that police had probable cause to arrest Key. They also promised to provide the court with evidence of an officer's examining the protective order and relying on it in arresting Key:

"Here, it is undisputed that at the time plaintiff and Roberta Kirkland presented at the City of Parsons' Police Station on the evening of October 3, 1991, the couple were engaged in a domestic dispute. That fact, *combined with the existence of a facially valid protection from abuse act order,* clearly constitutes reasonably trust-

worthy information on which the arresting officers were entitled to rely in effecting plaintiff's arrest and the officers have so testified." (Emphasis added.)

Footnote 1 stated:

"The depositions of the arresting officers were recently concluded though the transcripts of same are as yet unavailable. Undersigned counsel has requested the court reporter expedite these deposition transcripts and undersigned counsel will immediately provide to the court the relevant portions of the arresting officer's testimony confirming that the facially valid protection from abuse act order, was actual[ly] examined in the police department's dispatcher's office by Officer Gofourth, *prior to effecting plaintiff's arrest*, was a reasonably trustworthy source of information *upon which he relied in deciding to make the arrest.*" (Emphasis added.)

Defendants' reply was filed on November 22, 1995. It does not appear from examination of entries on the appearance docket between November 22 and December 20, 1995, when the district court's memorandum decision granting summary judgment in favor of defendants was filed, that the officers' deposition testimony was supplied to the court during that time.

Thus, it appears that the district court's statement that "[t]here is a dispute as to whether the police checked the police records to verify the restraining order, or whether they merely accepted the word of Roberta Kirkland as the truth," was not exactly accurate. Key did not dispute the contention that police officers checked the document in their files. Neither Key nor defendants suggested that the police necessarily relied on one or the other, but not on both, in making the arrest. The district court simply seems to have rendered its ruling before defendants furnished the deposition testimony which would have supported their assertion about the officers' checking police records. In the absence of the officers' testimony, the district court limited its consideration to the officers' reliance on Kirkland's word.

It may also be noted that there is in the record on appeal an "Order of Dismissal" in the Kirkland v. Key action. It states that on July 29, 1991, both parties appeared and agreed that the action should be dismissed. "IT IS THEREFORE ORDERED that plaintiff's action be and it is hereby dismissed without prejudice." The order is filed-stamped July 29, 1991. It should be noted that

K.S.A. 60-3108 provides that "[a] copy of any order under this act shall be issued to . . . the police department of the city where the plaintiff resides." There is no finding whether a copy of the temporary order or the order of dismissal was in the police records.

Key's argument assumes that the officers found a copy of the order in their records. In the district court, Ebert and Hein, Ebert, making the same assumption, argued that the temporary order was valid on its face and that it was one of a combination of factors that provided probable cause to arrest Key. Key argues on appeal that the district court reached the wrong decision because it failed to consider that the document consulted by the police was invalid on its face. Ebert and Hein, Ebert also seem to be arguing that Kirkland's word alone provided probable cause for the arrest. Their position with regard to the protective order does not take into account the district court's not considering it. They seem to assume for the purpose of their argument that the July temporary order remained enforceable in October, and they seem to assume that the police had read the order.

The effect of what police officers knew from looking at the order should have had on their view of Kirkland's credibility would seem to be a critical question. It was Ebert and Hein, Ebert, after all, who asserted in the district court that the police took the order into account in deciding to arrest Key. An order valid on its face, as assumed by Ebert and Hein, Ebert, would substantiate Kirkland's word. An order questionably valid or patently invalid on its face, as argued by Key, would raise doubts about her word.

The officers failed to question Kirkland as to why she was with Key at the police station. The officers could have attempted to verify that the parties had dissolved the temporary protective order and that they were living together. In fact, one of the uncontroverted facts found by the trial court was that the protective order was dissolved and the two were living together.

In addition, Kirkland's statement that she had a protective order, in and of itself, did not establish probable cause to arrest Key. There needed to be a showing that Key's conduct constituted a criminal trespass, assault, or battery under K.S.A. 1991 Supp. 60-

3107(g), the form of the statute in effect at the time. The trial court made no finding that Key had violated the protective order.

Key correctly contends that he was being arrested for a misdemeanor and that a warrantless arrest for a misdemeanor requires more than probable cause. The district court, however, measured the police conduct strictly on a probable cause gauge. The district court found that "there was sufficient probable cause for the arrest of Plaintiff on October 3, 1991, and[, therefore,] that the element of unlawful arrest necessary for a False Imprisonment claim is lacking."

Key makes a convincing case, not resisted by Ebert and Hein, Ebert, that the only offenses he might have been arrested for were misdemeanors. At that time K.S.A. 60-3107(g), the relevant provision of the Protection from Abuse Act, provided as follows:

"(g) If a person enters or remains on premises or property violating an order issued pursuant to subsection (a)(2), such violation shall constitute criminal trespass as provided in subsection (c) of K.S.A. 21-3721, and amendments thereto. If a person abuses, molests or interferes with the privacy or rights of another violating an order issued pursuant to subsection (a)(1), such violation may constitute assault as provided in K.S.A. 21-3408, and amendments thereto, or battery as provided in K.S.A. 21-3412, and amendments thereto."

Criminal trespass is a misdemeanor. K.S.A. 21-3721(c). Assault is a misdemeanor. K.S.A. 21-3408. Battery is a misdemeanor. K.S.A. 21-3412. The formal complaint filed against Key the day following his arrest charged him with committing criminal trespass, a misdemeanor.

The parties agree that a warrantless arrest on a misdemeanor charge is governed by K.S.A. 22-2401. K.S.A. 1997 Supp. 22-2401 provides in pertinent part:

"A law enforcement officer may arrest a person under any of the following circumstances:

. . . .

"(c) The officer has probable cause to believe that the person is committing or has committed:

. . . .

(2) a misdemeanor, and the law enforcement officer has probable cause to believe that:

(A) The person will not be apprehended or evidence of the crime will be irretrievably lost unless the person is immediately arrested;

(B) the person may cause injury to self or others or damage to property unless immediately arrested; or

(C) the person has intentionally inflicted bodily harm to another person."

Because there is no warrant involved in the present case, subsections (a) and (b) may be eliminated from consideration. Subsection (d) would be relevant only if the district court had determined as a factual matter that the officers saw Key committing a crime. The district court's only findings of fact about Key's conduct while in view of the officers do not implicate subsection (d):

"6. Plaintiff drove to the Parsons police station with Roberta Kirkland and their son on October 3, 1991 to seek the help of the police in resolving a domestic dispute.

. . . .

"8. Plaintiff's deposition states he told the officers that the protective order was dissolved and that if they would follow him home he would show them the order dissolving the protective order."

Thus, the potentially relevant portions of the statute are in subsection (c). Under 22-2401(c), in order to lawfully arrest Key, the police officers needed probable cause to believe that he had committed a misdemeanor *and* probable cause to believe that: (1) he would not be apprehended or evidence of the crime would be irretrievably lost unless he were immediately arrested; or (2) he might cause injury to himself or others or damage to property unless immediately arrested; or (3) he had intentionally inflicted bodily harm to another person. In other words, by statute, it was not enough that police officers had probable cause to believe that Key already had violated the restraining order—they also were required to have probable cause to believe either that he already had harmed someone or that there would be serious future consequences from failing to arrest him. See, *e.g., State v. Schur*, 217 Kan. 741, 746-47, 538 P.2d 689 (1975). In the present case, it appears that the district court's determination was limited to probable cause to believe that Key already had violated the restraining order. We find nothing in the record to support a finding that Key violated a protective order, if one did exist.

Key complains that the district court focused too narrowly on the arrest to the exclusion of the continued incarceration as the basis for a cause of action for false imprisonment. He contends that false imprisonment could have been shown by the police officers' continuing to hold him after the courthouse opened the next day and the records there could have been checked. His contention raises a number of questions of fact that were not addressed in connection with the defendants' motion for summary judgment. Among these would be what records were available to the police officers outside office hours, what additional records were available to them during office hours, and how the formal complaint charging Key with criminal trespass fits in. The complaint was file-stamped at 2:21 p.m. on October 4 after Key was arrested during the evening hours of Thursday, October 3, 1991.

Key complains that the district court entered summary judgment before his expert witness, Professor James Jeans, had been deposed. Ebert and Hein, Ebert point out that Key did not need Jeans' deposition testimony for the purpose of opposing the motion for summary judgment. Jeans was Key's expert witness, and Key could have submitted an affidavit from Jeans to support his opposition to the motion. The purpose for which Key contends he needed Jeans' testimony was to show that a state action for false imprisonment provided an adequate remedy and thereby precluded a 42 U.S.C. § 1983 (1994) action and that issue was concluded in Key's favor in the second memorandum decision and order of the district court.

We conclude that the uncontroverted findings of fact do not support the trial court's determination that police officers had probable cause to arrest Key.

The judgment of the district court granting summary judgment is reversed, and the case is remanded for further proceedings consistent with this opinion.