No. 68,785

Ralph E. Hess, *Appellant*, v. St. Francis Regional Medical Center, *Appellee*.

(869 P.2d 598)

Opinion filed March 4, 1994.

*Kiehl Rathbun*, of Wichita, argued the cause and was on the brief for appellant.

*Don D. Gribble II*, of Kahrs, Nelson, Fanning, Hite & Kellogg, of Wichita, argued the cause for appellee.

The opinion of the court was delivered by

LOCKETT, J.: Plaintiff Ralph Hess appeals the jury's finding for the defendant, St. Francis Regional Medical Center (St. Francis), in a negligence action, claiming the trial court erred in: (1) allowing into evidence his pretrial settlement with other defendants, and (2) ruling his workers compensation benefits could be considered as collateral source benefits in determining damages. Defendant asserts that the plaintiff failed to properly designate the ruling appealed from in his notice of appeal.

Hess, an employee of Vulcan Materials (Vulcan), was injured on the job. After Hess settled his workers compensation claim, Vulcan terminated Hess' employment. Hess sued Vulcan, his former employer, for retaliatory discharge and for negligently failing to properly notify medical personnel of the caustic nature of the liquid that caused his burns. He also sued Chris Cookson, the plant nurse for Vulcan, and St. Francis for failing to act on the information from his employer that he had been burned by a caustic liquid. Without admitting liability for its conduct or action, Vulcan paid Hess $15,000 and waived its right to subrogate medical expenses and other workers compensation benefits previously paid to Hess. After the settlement, all the defendants except St. Francis were dismissed as parties to the action. However, at trial, the jury could still assess the fault of the defendants that had been dismissed.

In the pretrial order the parties stipulated to the facts of the settlement but did not agree to the admissibility into evidence of Hess' settlement with Vulcan and Vulcan's waiver of its right to subrogation for the workers compensation benefits paid. At trial, Hess alleged St. Francis was negligent in its treatment of his burn injuries and that its negligent treatment of the burns had aggravated his injuries. St. Francis claimed that Hess and the dismissed parties were at fault.

The pertinent facts are as follows. Hess was attempting to unplug a saltwater saturator by steam pressure. The saturator erupted, spraying him with liquid chlorine; hydrogen; and sodium hydroxide, a caustic substance; and salt water. Hess immediately went to a safety shower and rinsed off as much of the chemicals as possible.

After assisting in the control room, Hess began a second safety shower until emergency medical services (EMS) personnel arrived. The EMS personnel transported Hess to St. Francis for treatment. Hess claimed he informed the EMS personnel he had been burned with a superheated brine of heavy salt and caustic. An EMS employee who responded to the emergency call testified Hess told him he (Hess) had been burned with scalding salt water and had denied being burned with anything else.

Hess asserted that even though he informed the hospital personnel he had been exposed to caustic chemicals, which react violently with salt water, they treated him with a chlorine solution bath. When Hess attempted to get out of the chlorine solution, Dr. Jost, one of the treating physicians, ordered the nurses to let Hess out of the chlorine bath. Hess was then treated with a non-chlorine bath.

On cross-examination, Hess admitted that when the accident occurred he did not know what the liquid solution that had burned him contained. When the initial safety shower did not work as he hoped, Hess determined a caustic liquid was involved. Hess could not recall much of what had occurred after he arrived at the hospital.

Eric Phillips, an industrial hygienist for Vulcan, testified that when a worker is injured Phillips' responsibility is to inform the hospital of "primary information" such as the type and cause of injury. Phillips stated he initially telephoned and informed Doctor Winegar and the St. Francis hospital emergency room personnel that Hess had been burned with hot brine. Phillips then phoned the plant and found out there could have been trace amounts of caustic, or hydrochloric acid, in the solution that burned Hess.

After learning a caustic solution was involved, Phillips went to the hospital. He arrived at the hospital at the same time as the ambulance. Phillips identified himself to people wheeling Hess into the hospital on a gurney. Phillips testified that when he heard Hess tell the nurse he had been burned with hot brine, Phillips interjected, "[T]here could be a trace amount of caustic or HCl." Phillips stated the nurse did not acknowledge his comment. Hess' wife and stepdaughters testified that Phillips told them at the hospital that Hess had been burned with brine and did not mention the solution contained caustic chemicals. Phillips

did not remember this conversation. The nurse did not remember Hess saying he had been burned by a caustic liquid. Phillips later talked to Dr. Jost but did not remember discussing the contents of the solution Hess was using when burned.

Cookson testified that the day after the accident a Vulcan manager told her to call Dr. Jost to confirm the doctor was aware of the fact that a caustic substance was involved in the accident. According to Cookson, later that day, when he informed Dr. Jost that Hess had been burned with a caustic liquid, the doctor replied he wished he had known that sooner. Dr. Jost testified he was not informed the first evening that a caustic burn was involved. If he had known caustic was involved, a different treatment would have been followed. The doctor's notes reflected he was not told until three days after Hess' admission that caustic was involved. If this fact had been known within six hours of the accident, the amount of scarring and disfigurement could have been reduced. Dr. Jost did not recall Hess telling the hospital personnel, when Hess was first placed in the tank, that he had been burned with caustic.

The jury found Vulcan 100% at fault. The trial court entered judgment in favor of St. Francis. Hess appealed to the Court of Appeals. This court, on its own motion, transferred the case to its docket.

### APPELLANT'S NOTICE OF APPEAL

It is a fundamental proposition of Kansas appellate procedure that an appellate court only obtains jurisdiction over the rulings identified in the notice of appeal. Hess' notice of appeal challenged "the following portions of the jury verdict and judgment" entered by the trial court:

"1. The jury's determination of comparative fault. (Special questions one and two).
2. The jury's determination of the period of time over which payment of future economic loss would be needed. (Special question five).
3. The jury's determination of net amount of collateral source benefits received to date. (Special question six).
4. The jury's determination of net amount of collateral source benefits to be received in the future. (Special question seven)."

St. Francis contends K.S.A. 60-2103(b) requires the notice of appeal to designate the judgment or part thereof appealed from.

It argues that because plaintiff's notice of appeal does not designate any trial court rulings as being challenged, consideration of any claim by Hess that the trial judge erred is precluded. For authority, St. Francis cites *Anderson v. Scheffler*, 242 Kan. 857, 861, 752 P.2d 667 (1988).

In *Anderson*, Jacob Anderson and his brother James had delivered a load of poultry meal to a plant. Jacob's left leg was severed when it slipped into an auger. James went to his brother's aid and observed that his brother's leg had been severed. Both brothers filed suits against various defendants. After a lengthy battle in both the federal and state courts, part of the action was settled. At separate hearings, the Kansas district court granted defendants' motions for summary judgment against each of the brothers. Only one notice of appeal was filed. The notice of appeal listed Jacob Anderson as the appellant, but not his brother James, and stated the appeal was being taken from the memorandum decision filed April 27, 1987. Each of the brothers was listed as an appellant in the briefs. The defendant asserted that because James was not listed as an appellant in the notice of appeal, the appellate court was without jurisdiction to hear James' claim.

The *Anderson* court noted that James lacked standing on appeal because he was not listed as an appellant in the notice of appeal and Jacob had no standing to assert his brother's appeal. The court held that it was without jurisdiction to hear the arguments of a party who was not named either directly or by inference in the notice of appeal. In addition, the court found it had no jurisdiction to hear Jacob's appeal of the summary judgment ruling of the court, filed December 29, 1986, because appeal of that judgment had not been designated in the notice of appeal. The issues on appeal were limited to those contained in the memorandum decision dated April 21, 1987.

Here, the notice of appeal specified Hess was appealing from certain portions of the jury verdict *and the judgment entered by the court*. Is Hess' notice of appeal sufficient to include the comparative fault and collateral source benefits determinations raised by Hess in his appeal? To find if these issues can be addressed in the appeal, we must determine whether a notice of appeal should be narrowly or broadly construed.

In *Alliance Mutual Casualty Co. v. Boston Insurance Co.*, 196 Kan. 323, 326-27, 411 P.2d 616 (1966), appellant had failed to name the court appealed to. The appellee attempted to strike the appeal. We noted there was no basis to interpret the new Kansas Code of Civil Procedure as strictly as required by previous Supreme Court decisions. We observed that K.S.A. 60-102 provides for liberal construction to secure the just, speedy, and inexpensive determination of every action or proceeding. The code of civil procedure was not rewritten to make more technical and burdensome the requirements of the notice of appeal as construed by the court in its previous decisions. We found that the failure to name the court appealed to was not a ground for dismissal but an irregularity to be disregarded unless the appellee has been misled.

Using a liberal construction to secure the just, speedy, and inexpensive determination of every action or proceeding required by the code of civil procedure, we find that the notice of appeal was sufficient to include the issues stated in the appellant's brief. The appellee does not claim that it was surprised or placed at a disadvantage by the issues appellant briefed.

## II. ADMISSION OF SETTLEMENT INTO EVIDENCE

Prior to trial, Hess settled with Vulcan and its employees. He dismissed his claims against them. Hess proceeded to trial against the remaining defendant, St. Francis. The jury was to compare the fault of the defendants who had been dismissed from the action.

Over Hess' objection, during cross-examination of Eric Phillips, Phillips informed the jury that Vulcan had been sued and had settled with Hess prior to trial. During cross-examination of Hess, the matter of settlement was also raised. St. Francis' attorney asked Hess if he had sued and settled with his employer. Hess admitted that he had sued and settled with his employer. St. Francis' attorney then asked if Hess had received $231,819.85 in workers compensation benefits from his employer. Hess stated he had received workers compensation but did not know the total amount. The attorney then asked Hess if he was seeking to recover expenses from St. Francis that had already been paid by Vulcan in the settlement. (It is not clear if Hess answered that

question.) Finally, in the cross-examination of Dr. Jost, the doctor acknowledged that Vulcan had been sued by Hess.

It has been consistently held that offers of settlement and evidence of pretrial settlements with other parties to the action are generally inadmissible. There are two statutes which specifically concern the admissibility of evidence concerning settlement negotiations and settlements. K.S.A. 60-452 provides in part that evidence a person has, in compromise, furnished money or any other thing to another who claims to have sustained loss or damage is inadmissible to prove his or her liability for the loss or damage or any part of it. K.S.A. 60-453 states that evidence a person has accepted or offered or promised to accept a sum of money or any other thing in satisfaction of a claim is inadmissible to prove the invalidity of the claim or any part of it. K.S.A. 60-452 is concerned with possible prejudice to a party on the issue of liability. K.S.A. 60-453 is concerned with protecting the plaintiff's claim. The public policy behind these statutes is to promote settlement. *Ettus v. Orkin Exterminating Co.*, 233 Kan. 555, 567, 665 P.2d 730 (1983).

In *Lytle v. Stearns*, 250 Kan. 783, 830 P.2d 1197 (1992), this court discussed: (1) the disclosure of settlement agreements to the jury; (2) the admissibility of evidence regarding a settlement; (3) that the statements and defenses set out in the pleadings are not admissible as admissions; and (4) the cross-examination of a lay party witness regarding theories asserted against a party no longer in the lawsuit.

*Lytle* involved a survival and wrongful death action filed by the estate of the deceased against multiple defendants. Deborah K. Lytle was a passenger in a car involved in a head-on automobile collision. Deborah was transferred from the accident scene to a hospital by ambulance. At the hospital, Deborah went into cardiac and respiratory arrest and died. Deborah's estate brought an action against the driver of the car she had been riding in, the hospital, and the ambulance driver. Other parties were impled into the lawsuit by the ambulance driver for comparative negligence purposes. Prior to trial, the estate settled with all defendants except the ambulance driver. Each of the settling defendants denied liability and stated that the payment of the specified amount to the plaintiff should not be construed as an

admission of liability. The release and settlement agreements each contained a confidentiality provision.

Prior to trial, the plaintiff filed a motion in limine to prohibit the remaining defendant from referring directly or indirectly to any dismissal of parties who had previously been named as defendants. The defendant opposed the motion, claiming that *Ratterree v. Bartlett,* 238 Kan. 11, 707 P.2d 1063 (1985), allowed the fact of settlement to be admitted into evidence. The *Ratterree* court had held that where any defendant has entered into a confidential settlement and the settling defendant is a witness at the trial of the remaining defendants or remains a party, the trial court shall disclose to the jury the existence and content of the settlement unless the court finds the disclosure will create substantial danger of undue prejudice, of confusing of the issues, or of otherwise misleading the jury. The trial court in *Lytle* denied the motion but precluded the defendant from mentioning the settlements. Later in the trial, the court informed the jury of the settlement.

On appeal, the plaintiff argued (1) that *Ratterree* applies only to sliding-scale agreements where the settling defendant retains an interest in the judgment and (2) that K.S.A. 60-452 and K.S.A. 60-453 prohibit evidence of compromise, settlement, or invalidity of a claim. The *Lytle* court noted the rule stated in *Ratterree* is broad enough to include any confidential settlement in any tort action involving multiple defendants when the settling defendant is a witness and either remains a party to the action or retains some financial interest in the litigation. 250 Kan. at 791. The *Lytle* court pointed out that *Ratterree* involved a sliding-scale settlement, also known as a *Mary Carter* agreement, which most courts insist be disclosed due to the possibility of prejudice or collusion because the settling defendant's liability is decreased depending on the outcome of the trial. The *Lytle* court noted that the statutory purpose of K.S.A. 60-452 and K.S.A. 60-453 is to promote settlements. The *Lytle* court observed that none of the settling defendants in that case were still parties to the litigation, nor did they have a financial stake in the outcome or a claim against the remaining defendant and they had always denied that they were negligent. The court held under the facts it was error to admit the evidence of the settlements. As in *Lytle,*

the settlement between Hess and Vulcan was not a *Mary Carter* agreement and should not have been disclosed to the jury.

St. Francis claims that the trial judge's admission of the settlement, however, does not necessarily require reversal. To require reversal, the error must have prejudiced the substantial rights of Hess and affected the jury's verdict. *Tamplin v. Star Lumber & Supply Co.*, 251 Kan. 300, 308, 836 P.2d 1102 (1992). In *Tamplin* the erroneously admitted evidence was a doctor's testimony that there was a slight possibility the injured child would have developmental problems but there was no evidence the child was aware of this possibility. We found the verdict was not out of proportion to the damages proven and that the erroneous admission of evidence did not substantially prejudice the defendant. 251 Kan. at 309. In this case, the resolution of the issue of St. Francis' liability hinged on when the hospital personnel were told of the caustic nature of the burn. The erroneously admitted evidence of the settlement had a potential for a much greater impact on the jury's verdict.

St. Francis next contends *Lytle* can be distinguished on the facts. It argues that in *Lytle*, the defendants who settled were not originally defendants in the case but were subsequently joined for comparison of fault. St. Francis notes that in *Lytle* the admission of the settlement was particularly prejudicial because the non-settling defendant did not present sufficient evidence of liability of all of the settling defendants but was allowed to imply all defendants who settled were at fault. It notes that in this case Vulcan, the settling defendant, was an original defendant instead of being brought in under joinder, and there was evidence of fault by the settling defendant. We find St. Francis' contention is a distinction without a difference.

St. Francis also maintains that evidence of the settlement was relevant to show the bias of the witness Phillips, and that Hess' theory of his injury changed after the settlement. St. Francis asserts that the probative value of the fact of settlement outweighed its prejudicial value and that the admissibility of this evidence was within the discretion of the court.

We disagree. Although an employee of Vulcan was a witness, Vulcan was not a party to the action, having been dismissed. Vulcan had paid an agreed amount and waived its subrogation

rights to any damages recovered by Hess from St. Francis. Vulcan had no financial interest in the litigation by virtue of its waiver of subrogation rights. Because Vulcan waived subrogation, its monetary liability was fixed; therefore, evidence of the settlement was not relevant to show bias.

In addition, Hess' theory of his injury did not change. His petition alleged liability under five separate causes of action involving Vulcan, its employees, and St. Francis. The claims were that Vulcan and its employees either intentionally or negligently failed to inform the hospital's medical personnel caustic was involved or, in the alternative, that St. Francis negligently treated Hess if the hospital staff had been informed caustic was involved. The pretrial order noted Hess had settled his claims with all defendants except St. Francis. Hess' only remaining claim was the fourth cause of action pled in his petition.

The admission of the evidence of settlement was not within the discretion permitted a trial court, and it should not have been admitted.

During cross-examination, St. Francis' counsel questioned Hess about his claim against Vulcan in the original pleading and then asked him if, after having settled with Vulcan, he was now seeking to recover the same damages from St. Francis. Later, in closing argument, counsel for St. Francis discussed the fact Vulcan had also been sued and settled with Hess. In addition, he observed that the plaintiff's original position when he filed the action was that Vulcan was negligent because its safety officer had not told anybody anything about the contents of the solution that caused his injury. The attorney pointed out that after the settlement, plaintiff claimed that Vulcan's safety officer did communicate the contents of the solution to St. Francis.

In *Lytle,* the plaintiff also contended that the trial court abused its discretion in permitting the defendant to introduce into evidence the prior pleadings and cross-examine a witness about the prior pleadings. The defendant in *Lytle* asserted that Kansas law allows the admission of abandoned pleadings into evidence as admissions against interest, subject to the party's explanation. After a discussion of the various theories as to admission of prior pleadings, this court in *Lytle* observed it was dealing with conclusory allegations as to law, not with objective facts, as eviden-

tiary admissions contained in prior pleadings. The admissions introduced concerned allegations of conduct by former adverse parties. We noted that settlement is to be encouraged. We declined to set a bright line rule for the resolution of all situations regarding prior pleadings but set forth concepts to be considered by the judge. First, a lay party witness should not be cross-examined regarding theories or allegations of liability asserted against a former party who is no longer in the lawsuit if that former party was brought into the litigation as a party after being designated by an initial defendant for comparative negligence purposes under K.S.A. 1993 Supp. 60-258a. Second, written pleadings asserting theories or allegations of liability addressed against a former party who was in the action only for the purpose of comparing negligence should generally be excluded. 250 Kan. at 800.

We also noted:

" 'The modern equivalent of the common-law system [of pleadings] is the use of alternative and hypothetical forms of statement of claims and defenses, regardless of consistency. . . . [P]leadings of this nature are directed primarily to giving notice and lack the essential character of an admission. To allow [such pleadings] to operate as admissions would render their use ineffective and frustrate their underlying purpose.' " 250 Kan. at 798 (quoting McCormick on Evidence § 265, 781 [3d ed. 1984]).

Hess, a lay party, should not have been cross-examined regarding theories or allegations of liability asserted in his pleadings against a former party who was only in the lawsuit for the jury to compare negligence. Each of the settling parties denied liability and had no financial interest in the outcome. Under the circumstances, it was error to allow Hess' original pleadings to operate as an admission because it frustrated their underlying purpose.

These errors require that a new trial be held. The other issue, the admissibility of the workers compensation benefits as collateral source benefits, is moot. We note that we found the collateral source benefit statute involved, K.S.A. 1993 Supp. 60-3802, unconstitutional in *Thompson v. KFB Ins. Co.*, 252 Kan. 1010, 1024, 850 P.2d 773 (1993).

Reversed and remanded for a new trial.

McFARLAND, J., not participating.

SIX, J., concurring and dissenting: I agree that we have jurisdiction to entertain the appeal. I would affirm the trial court on the basis of harmless error.

I disagree with the majority's statement that "Hess' theory of his injury did not change." Hess' initial petition asserted negligence on the part of Vulcan, claiming: "*Second Cause of Action* . . . Plaintiff's physician was told by Vulcan . . . employees . . . that Plaintiff had been burned with steam, *which contained no caustic chemicals.*" (Emphasis added.) "*Third Cause of Action* . . . [T]he existence of caustic chemicals in the steam which burned Plaintiff was, in fact, known to the . . . employees of Defendant Vulcan . . . when inquiry was made of them. Plaintiff believes their withholding of this information was intentional, in an attempt to shield Defendant from violations of federal safety regulations." Hess claimed that Vulcan acted "negligently [in] failing to report the existence of caustic chemicals, when such facts were, or in the exercise of due care and caution, should have become known."

After settlement with Vulcan, the case was submitted to the jury on claims as stated in the pretrial order. Hess claimed

"that he was burned by a caustic substance at Vulcan Materials on May 4, 1989. Following his injury he was admitted to St. Francis Regional Medical Center under the care of Dr. Gary Jost. At the time of admission plaintiff's burns were primarily second degree burns, not requiring skin grafts. *Agents of Vulcan Materials Company informed medical personnel in the employment of defendant [St. Francis] of the caustic nature of the chemicals causing plaintiff's burns on May 4, 1989.* This information was not communicated to plaintiff's physician." (Emphasis added.)

Hess' theory on the cause of his injury changed. Hess' switch of the factual assertion concerning whether Vulcan had informed St. Francis of the caustic nature of the chemicals presented a difficult trial court judgment call concerning whether the limited cross-examination on Vulcan's settlement should be admitted into evidence.

Any error resulting from the admission of the Vulcan settlement was harmless. Any error requiring reversal must have prejudiced the substantial rights of Hess and have affected the jury's verdict. See *Tamplin v. Star Lumber & Supply Co.,* 251 Kan. 300, 308, 836 P.2d. 1102 (1992). We held in *Tamplin* that the erroneous

admission of a physician's testimony did not substantially prejudice the defendant. 251 Kan. at 309. The majority in the case at bar, without explanation, concludes that the erroneous admission of the Vulcan settlement "had a potential for a much greater impact on the jury's verdict."

The jury was instructed on the claims asserted by Hess and by St. Francis. The jury found Vulcan to be 100 percent at fault.

The burden is upon Hess to show that the jurors disregarded their oath, not as a matter of speculation, but as a demonstrable reality. There must be more than speculation that Hess did not receive a fair trial. Hess claims error in the admission of evidence. There is no presumption of prejudice. Hess must prove that the admission prejudiced him. See *Walters v. Hitchcock*, 237 Kan. 31, 35, 697 P.2d 847 (1985). I agree with and apply by analogy Justice Lockett's statement in his dissent in *Harrier v. Gendel*, 242 Kan. 798, 802, 751 P.2d 1038 (1988), which we endorsed in *Wisker v. Hart*, 244 Kan. 36, Syl. ¶ 4, 766 P.2d 168 (1988), in overruling *Gendel*:

"Unlike the majority, I cannot find that as a matter of law the improper introduction of evidence of collateral source benefits into the trial was so inherently prejudicial that it caused the jurors to disregard their oath and the judge's instructions and to decide the case on an improper ground. It is true the plaintiff did not receive a perfect trial, but he did receive a fair trial. I would affirm the judgment." 242 Kan. at 802.

*Hart* answers the workers compensation benefits collateral source issue not reached by the majority in the case at bar. Admission of the benefits evidence does not require a new trial. Admission of that evidence effects the issue of damages, not liability. The error is harmless. See *Hart*, 244 Kan. at 47.