No. 110,384

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

JOHN CAPORALE, PH.D.,
*Appellant*,

v.

STATE OF KANSAS BEHAVIORAL SCIENCES
REGULATORY BOARD,
*Appellee.*

SYLLABUS BY THE COURT

1.

The word "may" in a statute typically signals that a decision is a discretionary one, not an entitlement. Accordingly, K.S.A. 2013 Supp. 74-5315, which provides that the Kansas Behavioral Sciences Regulatory Board may grant reciprocal licenses, places the decision to do so within the discretion of the Board, guided by criteria set out in the statute. Even so, the Board may not arbitrarily or unreasonably deny an application.

2.

Where a Kansas resident who did not qualify for a Kansas doctoral-level psychologist's license obtained a Minnesota license and sought to use it as the basis to obtain a Kansas license by reciprocity, the Kansas Behavioral Sciences Regulatory Board acted within its authority to deny the application where the applicant had not worked professionally in Minnesota.

Appeal from Shawnee District Court; FRANKLIN R. THEIS, judge. Opinion filed November 7, 2014. Affirmed.

*Susan L. Mauch*, of Cosgrove, Webb & Oman, of Topeka, for appellant.

*Marty M. Snyder*, assistant attorney general, for appellee.

Before LEBEN, P.J., ATCHESON and SCHROEDER, JJ.

LEBEN, J.: John Caporale is licensed as a masters-level psychologist in Kansas, where he has practiced psychology since 1991. He obtained a doctorate degree in psychology in 2002 from a regionally accredited university in Minnesota, but the Kansas Behavioral Sciences Regulatory Board denied his application for a doctoral-level license because the Minnesota university's doctoral program didn't meet the Kansas Board's academic standards.

After Kansas officials denied him a doctoral-level license, Caporale obtained a doctoral-level license in Minnesota, though he continued to practice psychology only in Kansas. After he had been licensed in Minnesota for 5 years, Caporale submitted a new application for a doctoral-level license in Kansas based on reciprocity; a Kansas statute, K.S.A. 2013 Supp. 74-5315, provides that the Board "may grant" a license to a person licensed at the doctoral level in another state. But the Board denied Caporale's application because he hadn't been practicing at the doctoral level in Minnesota, where he held the doctoral-level license.

Caporale appeals, contending that the Board was required to grant his application because he had a doctoral-level license in Minnesota and had practiced while so licensed for 5 years, the length of time the Board required for reciprocal licensing. See K.A.R. 102-1-3b. But K.S.A. 2013 Supp. 74-5315 clearly gives the Board discretion when granting Kansas licenses based on reciprocity with other states, and the Kansas Board acted reasonably here. The basis for reciprocal admission is in part that a practitioner licensed in another state has successfully practiced there with no disciplinary action for some requisite period of time. There was no cause to grant Caporale a Kansas license

based on 5 years without disciplinary action in Minnesota when he wasn't practicing there at all. Caporale had never practiced in Minnesota, and he wasn't licensed to practice at the doctoral level in Kansas. The Board did not abuse its discretion or otherwise act unreasonably by denying him a reciprocal doctoral-level Kansas license.

FACTUAL AND PROCEDURAL BACKGROUND

Caporale received a master's degree in clinical psychology from Emporia State University in 1991. Kansas law establishes two categories of psychology practice: (1) masters-level psychology and (2) licensed psychology, which requires a doctorate. See K.S.A. 2013 Supp. 74-5310(a); K.S.A. 74-5302(e); K.S.A. 74-5361(e). There are two types of practitioners within the masters-level category: masters-level psychologists and clinical psychotherapists. K.S.A. 74-5361(c), (d). The Board licensed Caporale as a masters-level psychologist in 1991 and as a clinical psychotherapist in 2000.

A person with a masters-level license may practice psychology for his or her employer, subject to some supervision requirements. The person may use the title "masters level psychologist" but may not use the title of "licensed psychologist" or "psychologist." A person with a clinical-psychotherapist license may use the title "licensed clinical psychotherapist" but again may not use the title of "licensed psychologist" or "psychologist." K.S.A. 74-5362.

In 2002, Caporale received a doctorate degree in psychology from Walden University, a regionally accredited institution in Minneapolis, Minnesota. Caporale applied for a Kansas license as a psychologist based on that degree, but the Board denied the application because Walden University's doctoral program didn't meet the Board's academic requirements. Caporale appealed, but our court affirmed the Board's decision. *Caporale v. Kansas Behavioral Sciences Regulatory Bd.*, No. 92,743, 2005 WL 638125 (Kan. App. 2005) (unpublished opinion). Caporale submitted another application to the

Board in 2005, but it again denied it. Our court again affirmed the Board's decision, this time based on collateral estoppel, a legal doctrine under which an issue already decided between two parties may not be relitigated. *Caporale v. Kansas Behavioral Sciences Reg. Bd.*, No. 97,121, 2007 WL 2178255 (Kan. App. 2007) (unpublished opinion).

In 2006, the Minnesota Board of Psychology granted Caporale a license to practice in Minnesota as a clinical psychologist.

Caporale never practiced in Minnesota, though. From 2002, when he obtained his doctorate, to the time his application for reciprocal admission was denied, he was a clinical supervisor at Youthville Family Consultation Service in Wichita. He has been employed at Youthville since 1991.

In January 2012, Caporale submitted an application to the Board to be licensed as a psychologist in Kansas, this time through reciprocity rules. In his application, he said that he was a licensed psychologist and that he had worked as a clinical supervisor for at least 15 hours per week for 9 months during each of the past 5 years.

The Board has two methods for obtaining a reciprocal license—based either on substantially equivalent licensure requirements in the two states or on having practiced at the required level in the other state for 5 years. See K.S.A. 2013 Supp. 74-5315(a)(1) and (a)(2); K.A.R. 102-1-3b(b)(3). The Board's licensing manager responded to Caporale's application; she told him that she would recommend denial of the reciprocal license because Minnesota didn't have substantially equivalent licensure requirements and because Caporale hadn't professionally practiced psychology at the doctoral level for 5 years.

Caporale did not contest the conclusion that Minnesota lacked substantially equivalent licensure requirements, but he asked the Board to rule that he met the

4

eligibility requirement for a reciprocal license by having practiced psychology at the doctoral level for 5 years. The Board rejected Caporale's argument, concluding that he had not practiced psychology at the doctoral level in the only state where he was licensed to practice at that level, Minnesota.

Caporale appealed to the district court, which affirmed the Board. He then appealed to this court.

ANALYSIS

The Board is an administrative agency, so we review its decisions based on the standards set out in the Kansas Judicial Review Act. See K.S.A. 77-601 *et seq.*; K.S.A. 2013 Supp. 74-5337. That Act provides eight bases for a court to grant relief from an agency's action, but Caporale only alleges that two of them apply here. He contends that the agency erred in its interpretation or application of the law, K.S.A. 2013 Supp. 77-621(c)(4), and that its action was arbitrary, capricious, or otherwise unreasonable. K.S.A. 2013 Supp. 77-621(c)(8). We will focus on those two claims. And because the district court did not independently hear evidence, we review these issues without any required deference to its decision. See *Kansas Dept. of Revenue v. Powell*, 290 Kan. 564, 567, 232 P.3d 856 (2010); *Muir v. Kansas Health Policy Authority*, 50 Kan. App. 2d ___, 334 P.3d 876, 878 (2014).

For Caporale's claim of legal error, he argues that the Board is required to grant reciprocity admission to any applicant who meets the requirements set out by statute. But here Caporale runs into a hurdle at the very start of the statute authorizing reciprocity admission—it says that the Board *may* grant a license on this basis, not that it *must* do so:

"(a) The board may grant a license to any person who, at the time of application, is registered, certified or licensed as a psychologist at the doctoral level in another jurisdiction if the board determines that:

(1) The requirements of such jurisdiction for such certification or licensure are substantially the equivalent of the requirements of this state; or

(2) the applicant demonstrates on forms provided by the board compliance with the following standards as adopted by the board:

(A) Continuous registration, certification or licensure as a psychologist at the doctoral level during the five years immediately preceding the application with at least the minimum professional experience as established by rules and regulations of the board;

(B) the absence of disciplinary actions of a serious nature brought by a registration, certification or licensing board or agency; and

(C) a doctoral degree in psychology from a regionally accredited university or college.

"(b) An applicant for a license under this section shall pay an application fee established by the board under K.S.A. 74-5310, and amendments thereto." K.S.A. 2013 Supp. 74-5315.

The word "may" in a statute typically signals that the decision is a discretionary one, not an entitlement. See *In re R.S.*, 50 Kan. App. 2d ___, ___ P.3d ___ (No. 111,027, filed October 24, 2014), slip op. at 11; *Jordan v. Jordan*, 47 Kan. App. 2d 300, Syl. ¶ 6, 274 P.3d 657 (2012). Even in legal documents, the most common meaning of "may" is "has discretion to; is permitted to." Garner's Dictionary of Legal Usage 568 (3d ed. 2011). As our courts have noted, "may" usually won't be considered a command unless something in the context indicates it was used that way. *Friedman v. Kansas State Bd. of Healing Arts*, 296 Kan. 636, 645, 294 P.3d 287 (2013); *State ex rel. Secretary of SRS v. Jackson*, 249 Kan. 635, 641-42, 822 P.2d 1033 (1991).

Giving "may" its typical meaning makes sense here in the context of the statute. The statute establishes some standards that are judgment calls. For example, applicants seeking reciprocity admission based on a minimum level of experience in another state

must show "the absence of disciplinary actions *of a serious nature*" in the other state. (Emphasis added.) K.S.A. 2013 Supp. 74-5315(a)(2)(B). This sets up a standard like many others established in law that require the application of judgment. And the judgment here is exercised by the Board, which has specialized knowledge regarding practice in this field.

We note too that K.S.A. 2013 Supp. 74-5315 uses both "may" and "shall." In subsection (a), the statute provides that the Board "may grant" a reciprocity license under certain conditions. In subsection (b), the statute provides that an applicant "shall pay an application fee" when applying for a reciprocity license. The use of "shall" in the same statute is an additional indicator that the legislature intended the word "may" to carry its ordinary meaning. See *Tarrant Bell Property, LLC v. Superior Court*, 51 Cal. 4th 538, 542, 121 Cal. Rptr. 3d 312, 247 P.3d 542 (2011). We reject Caporale's argument that the Board is required to grant reciprocity applications whenever the minimum standards set out by the statute have been met.

This does not mean that the Board can deny an application for *any* reason, which takes us to K.S.A. 2013 Supp. 77-621(c)(8), the second potential basis for overturning the Board's decision. The Board cannot deny an application arbitrarily or in a manner that is otherwise unreasonable. K.S.A. 2013 Supp. 77-621(c)(8); see *In re Protests of Oakhill Land Co.*, 46 Kan. App. 2d 1105, 1115, 269 P.3d 876 (2012).

There is nothing arbitrary or otherwise unreasonable about the Board's decision in Caporale's case. The Board had previously decided that the academic requirements of the institute where Caporale got his doctorate did not meet the Board's standards. And deeming Caporale fit to qualify for admission based on the lack of disciplinary action in Minnesota for 5 years—while he has practiced professionally only in Kansas—would make no sense.

7

The Arizona Supreme Court considered a similar case in *Arizona State Bd. of Accountancy v. Cole*, 119 Ariz. 489, 581 P.2d 1139 (1978). In *Cole*, an applicant sought an Arizona license as a certified public accountant (a CPA). The applicant, Cole, had lived in Arizona and had worked as an accountant for many years, but he lacked a college degree, which Arizona required for a CPA. Cole then sat for—and passed—the CPA exam and got a California CPA license; California did not require a college degree. Armed with the California license, Cole sought an Arizona CPA license through reciprocity. The Arizona licensing agency denied Cole's application, and the Arizona Supreme Court affirmed that decision. The court emphasized that reciprocity provisions allow professionals to move from one state to another and were not designed to allow citizens of a state to use out-of-state licenses to obtain licensure in their own states:

> "It is crucial to note that the principle of comity embodied by such reciprocity provisions is not that *licenses* issued by another state should be recognized in Arizona, but rather that *citizens* of another state who are professionally licensed in that state should in certain circumstances be granted licensing advantages in Arizona. To permit an Arizona citizen to parlay the license of a state in which he has never resided into an Arizona license under the guise of 'reciprocity' would completely distort the meaning of that concept." 119 Ariz. at 492.

We agree: the Kansas reciprocity provision is not designed to allow a Kansas resident professional to acquire an out-of-state license and then to use that license to obtain Kansas credentials he or she does not otherwise qualify for.

Caporale argues on appeal that K.S.A. 2013 Supp. 74-5315 doesn't explicitly state that the professional experience required to obtain the reciprocal doctoral-level Kansas license be performed in the state in which the applicant holds the doctoral-level license. But that's the obvious purpose of reciprocal-licensing provisions, as the Arizona Supreme Court explained in *Cole*. And K.S.A. 2013 Supp. 74-5315 clearly gives the Board discretion. Exercising authority under a statute that provides it with discretion, the Board

does not abuse its discretion by refusing to grant a reciprocal Kansas license in this situation.

The district court's judgment, which affirmed the Board's decision, is affirmed.