NOT DESIGNATED FOR PUBLICATION

No. 127,044

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

BILLIE K. ELLIOTT,
*Appellant*,

v.

CENTURION OF KANSAS, LLC, KANSAS DEPARTMENT OF CORRECTIONS,
NICK POSGE, M.D., GORDON HARROD, M.D., SARAH MADGWICK, M.S., LCMFT,
and JANE and JOHN DOES NOS. 1-4,
*Appellees*.

MEMORANDUM OPINION

Appeal from Butler District Court; JANETTE L. SATTERFIELD, judge. Submitted without oral argument. Opinion filed February 14, 2025. Affirmed.

*Billie K. Elliott*, appellant pro se.

*Robert E. Wasinger*, legal counsel, Kansas Department of Corrections, and *Katrina L. Smeltzer*, of Kansas City, Missouri, for appellees.

*Don D. Gribble, II*, of Hite, Fanning & Honeyman L.L.P., of Wichita, for appellee Nick Posge, M.D.

Before BRUNS, P.J., SCHROEDER and CLINE, JJ.

PER CURIAM: Billie K. Elliott is a prison inmate who received ankle surgery while incarcerated and is claiming that surgery caused him lingering health complications. He filed a medical malpractice and personal injury lawsuit against the Kansas Department of Corrections (KDOC) and various medical providers who provided him with medical

1

treatment for his ankle through a contract with the KDOC. The district court dismissed Elliott's lawsuit without prejudice for his failure to exhaust his administrative remedies before filing suit, as required by K.S.A. 75-52,138. After reviewing the parties' arguments and relevant legal authorities, we see no error and affirm the district court's dismissal of Elliott's case without prejudice.

FACTUAL AND PROCEDURAL BACKGROUND

Elliott is an inmate in the El Dorado Correctional Facility in the custody of the KDOC. On March 9, 2023, he filed a medical malpractice, medical negligence, and personal injury lawsuit in district court against various medical providers who provided him with medical treatment for his ankle: Centurion of Kansas, Nick Posge, M.D., Gordon Harrod, M.D., Sarah Madgwick, two John Does, two Jane Does (Healthcare Defendants) and the KDOC, collectively referred to as "Defendants." Elliott claimed Posge performed surgery on his ankle on March 12, 2021. The surgery, however, apparently caused Elliott several debilitating complications.

Elliott attached a partially completed IMPP property damage/loss or personal injury claim form to his petition. On the form, he stated he was seeking $200,000 for, among other things, two years of MRSA staph infections which he claimed derived from the ankle surgery. The form was dated February 25, 2023, and notarized on February 28, 2023. It was completely blank other than Elliott's recitation of the nature of his claim. Meaning, the portions of the form which acknowledge receipt, findings, any recommendation by the warden/superintendent, and the portion for the Secretary's response and recommendation to address the claim were not filled out.

The KDOC moved to dismiss the lawsuit because it believed Elliott failed to exhaust his administrative remedies under K.A.R. 44-16-104a which requires an inmate filing a personal injury claim to submit the claim to the facility and the Secretary of

2

Corrections within 10 calendar days of the injury. It relied on *Pittman v. Bliss*, No. 113,577, 2015 WL 9302708, at *4 (Kan. App. 2015) (unpublished opinion), which found that inmates filing a claim under K.A.R. 44-16-104a "must file proof of proper administrative exhaustion with their petition" as required by K.S.A. 75-52,138. The KDOC believed Elliott's submitted complaint form did not contain a response from the facility or the Secretary of Corrections, and since it was filed on February 28, 2023, it was not filed within 10 calendar days of his injury. It therefore asked the district court to dismiss the case because Elliott failed to exhaust his administrative remedies.

The district court heard the motion to dismiss on June 6, 2023. At the hearing, the KDOC noted that Elliott had petitioned under K.S.A. 2023 Supp. 60-1501 in a previous lawsuit, case number 22-CV-84. The KDOC acknowledged that Elliott exhausted his administrative remedies in 22-CV-84 but argued he failed to do the same here. At the hearing the court found Elliott "failed to exhaust [his] administrative remedies before filing this medical malpractice lawsuit in 23-CV-70." The court consequently dismissed the case against all Defendants. It further asked the parties to file a legal memorandum on whether the dismissal should be with or without prejudice.

The KDOC filed a memorandum arguing that the case should be dismissed with prejudice because K.A.R. 44-16-104a's 10-day time limitation had expired. Defendants Centurion, Harrod, and Madgwick also filed a memorandum urging the court to dismiss the case with prejudice because "[a]ny attempt by the plaintiff to refile his claims would be out of time as the ten (10) day limitation in K.A.R. 44-16-104a has expired." Posge filed a separate motion also imploring the court to dismiss the case with prejudice. The court later filed a journal entry which granted KDOC's motion to dismiss and dismissed the case without prejudice "based on a failure to exhaust administrative remedies." Elliott filed a motion to alter or amend judgment on June 20, 2023, which the district court also denied.

Elliott appeals the district court's dismissal of his lawsuit but not its decision to deny his motion to alter or amend.

REVIEW OF ELLIOTT'S APPELLATE CHALLENGE

*Did the district court err in dismissing Elliott's case?*

Elliott makes several arguments on appeal, most of which are unpreserved or address Defendants' argument that Elliott's personal injury claim was untimely because it was not filed within 10 days of his injury. K.A.R. 44-16-104a(a) requires "[e]ach inmate claim for personal injury shall be submitted to the facility and secretary of corrections within 10 calendar days of the claimed personal injury." But the district court made no findings on the timeliness of Elliott's claim, nor did it base its decision on that argument. Therefore we need not address either side's arguments on this issue.

A. *Several of Elliott's arguments on appeal are unpreserved for appellate review.*

To begin, Elliott raises several new arguments which he did not mention to the district court. First, he contends the Healthcare Defendants acted under color of state law within the meaning of 42 U.S.C. § 1983 and are therefore not immune from liability for their actions. He then contends the Healthcare Defendants violated his rights under the Eighth Amendment to the United States Constitution which protects prisoners against cruel and unusual punishment. Last, he argues KDOC is responsible for the actions of Centurion's employees through the doctrine of respondeat superior.

But Elliott raised none of these arguments in his response to Defendants Centurion, Harrod, and Madgwick's motion to dismiss. In fact, Elliott conceded that he was not alleging claims "arising out of the deprivation of his U.S. Constitutional Law, Federal Law, i.e. 8th and 14th Amendment[] right to adequate and effective healthcare guaranteed persons in both state and federal custody, e.g. prisoners." Elliott did not allege

4

any complaint about the procedures governing his personal injury claim—he simply argued he had complied with those procedures.

Kansas Supreme Court Rule 6.02(a)(5) (2024 Kan. S. Ct. R. at 36) requires an appellant to cite "a pinpoint reference to the location in the record on appeal where the issue was raised and ruled on" in the district court. See also *State v. Paredes*, 34 Kan. App. 2d 346, 348, 118 P.3d 708 (2005) (Generally we will not consider claims which have never been presented to the district court for a ruling.). Or "[i]f the issue was not raised below," the brief must include "an explanation why the issue is properly before the court." Rule 6.02(a)(5) (2024 Kan. S. Ct. R. at 36). Yet Elliott did not cite where he raised these arguments to the district court. Nor did the district court's journal entry dismissing the case mention any of these legal theories in explaining its ruling. Because Elliott never gave the district court an opportunity to address these arguments, we cannot address them now on appeal.

In *In re Adoption of Baby Girl G.*, 311 Kan. 798, 803, 466 P.3d 1207 (2020), the Kansas Supreme Court explained the purpose behind the preservation rule:

> "'This rule is not simply a "gotcha" from the appellate courts. The rule encourages litigants to fully present their cases to the trial court. All issues and claims are then tested by the adversarial process further refining and defining the facts and law in dispute. How can the district judge be expected to make a decision in consideration of arguments that are not brought before him or her? The rule also insures fundamental fairness in the proceeding. Parties deserve the opportunity to respond to all arguments made and present evidence to support their respective positions. If litigants can raise a matter for the first time on appeal, they would be free to, in essence, readjudicate the matter merely because they forgot to raise everything they wanted to before the trial court or second-guessed their tactical decisions at trial once they started preparing their appellate brief. Just as we do not expect trial courts to support trial by ambush, neither should we tolerate the same on appeal. An appellant is not "permitted to feed one can of worms to the trial judge and another to the appellate court." [Citation omitted.]'"

Similarly, we cannot find the district court erred based on arguments Elliott never raised to that court and so we find these arguments unpreserved.

Elliott also argues on appeal that several Kansas administrative regulations are unconstitutional because they violate his substantive due process and equal protection rights. In sum, he believes the regulations are unconstitutional because they "are oppressive to Kansas prisoners['] protected rights to seek compensation for their personal injuries." Again, Elliott fails to provide a pinpoint citation directing us to where he raised these contentions before the district court.

While Elliott did not make this argument in his response to the motion to dismiss, an independent review of the record, however, shows that Elliott raised this issue in his motion to alter or amend judgment, which the district court denied. But he did not acknowledge that he was raising a new argument to the district court in his motion to alter or amend judgment, or if he had raised it previously, he failed to cite in his motion where he did so. Rather, Elliott appears to concede that he could have raised this issue prior to his motion. This is problematic because "motions to alter and amend may properly be denied where the moving party could have, with reasonable diligence, presented the argument prior to the verdict." *Wenrich v. Employers Mut. Ins. Co.*, 35 Kan. App. 2d 582, 590, 132 P.3d 970 (2006). As we have explained, the purpose of a motion to alter or amend under K.S.A. 60-259(f) is to allow the district court a chance to correct an error, reconsider findings of fact and conclusions of law, or to make appropriate amendments or alterations to the order at issue. It is not an opportunity to present additional evidence or arguments that could have, with reasonable diligence, been presented before that final order. *In re Marriage of L.S. and D.J.*, No. 125,656, 2024 WL 2795275, at *10 (Kan. App. 2024) (unpublished opinion).

Further, even if we found the district court mistakenly denied Elliott's motion to alter or amend on this basis, Elliott did not appeal this decision. We only have

6

jurisdiction over rulings identified in the notice of appeal. *Hess v. St. Francis Regional Med. Center*, 254 Kan. 715, 718, 869 P.2d 598 (1994).

Because Elliott failed to properly raise his argument on the constitutionality of the Kansas administrative regulations, we find this argument unpreserved as well.

B. *Standard of review for Elliott's remaining arguments*

"Whether a district court erred by granting a motion to dismiss for failure to state a claim is a question of law subject to unlimited review." *Jayhawk Racing Properties v. City of Topeka*, 313 Kan. 149, 154, 484 P.3d 250 (2021). The appellate court will view the well-pleaded facts in a light most favorable to the plaintiff and assume as true those facts and any inferences reasonably drawn from them. If those facts and inferences state any claim upon which relief can be granted, then dismissal is improper. Dismissal is proper only when the allegations in the petition clearly demonstrate the plaintiff has no claim. *Kudlacik v. Johnny's Shawnee, Inc.*, 309 Kan. 788, 790, 440 P.3d 576 (2019); see K.S.A. 2023 Supp. 60-212(b)(6).

C. *We see no error in the district court's decision dismissing Elliott's case.*

In the KDOC's motion to dismiss, it argued the district court must dismiss Elliott's case because he failed to exhaust his administrative remedies under K.S.A. 75-52,138 and did not comply with the time requirements in K.A.R. 44-16-104a.

In *Chelf v. State*, 46 Kan. App. 2d 522, 525, 263 P.3d 852 (2011), this court explained "K.S.A. 75-52,138 requires any inmate in the custody of the Secretary of Corrections to exhaust all administrative remedies provided by the Secretary of Corrections before filing a civil lawsuit against the State of Kansas." It added that K.A.R.

44-16-104a is an "administrative regulation promulgated by the Secretary of Corrections governing inmate claims for personal injury." 46 Kan. App. 2d at 525-26.

K.A.R. 44-16-104a states:

"(a) Each inmate claim for personal injury shall be submitted to the facility and secretary of corrections within 10 calendar days of the claimed personal injury.

"(b) Each claim described in subsection (a) shall be submitted and processed in accord with the department of corrections' internal management policies and procedures.

"(c) The requirement that the inmate submit the claim as described in subsection (a) shall apply whether or not the inmate pursues a grievance pursuant to article 15 and whether or not the inmate files a claim with the legislative joint committee on special claims against the state."

At the heart of *Chelf*, this court held "the exhaustion requirement set forth in K.S.A. 75-52,138 is a mandatory, but nonjurisdictional, prerequisite to filing suit that must be strictly enforced by the court. Because it is not jurisdictional, failure to exhaust administrative remedies as required by this particular statute may be subject to certain equitable defenses." 46 Kan. App. 2d at 533. But see *Sperry v. McKune*, 305 Kan. 469, 485-88, 384 P.3d 1003 (2016) ("[W]e decline to decide today whether we will adopt *Chelf*'s holdings."). Inmates who file "a civil action must file proof of proper administrative exhaustion with their petition" under K.S.A. 75-52,138. *Pittman*, 2015 WL 9302708, at *4.

> 1. *Elliott failed to exhaust his administrative remedies under K.S.A. 75-52,138, K.A.R. 44-16-104a, and IMPP 01-118D.*

Defendants are correct that Elliott failed to properly exhaust his administrative remedies because he failed to complete the mandatory personal injury claims procedure. Based on the incomplete form Elliott submitted, it appears the facility never received the form, the warden/superintendent did not receive the form, no investigation report

8

occurred, no findings from the warden/superintendent occurred, no recommendations from the warden/superintendent were suggested, the Secretary of Corrections did not respond, and the Secretary of Corrections did not make any recommendation.

Plainly, this form does not show Elliott submitted his personal injury claim to the facility and Secretary of Corrections as required by K.A.R. 44-16-104a. Elliott recognizes that he must comply with this regulation. He nevertheless maintains he exhausted his administrative remedies because: (1) He filed a grievance in "BU-2022-CV-84," which according to him is "another case . . . regarding the ankle injury"; (2) he submitted 32 health services request forms; (3) he sent the personal injury claim form to the facility's warden and the Secretary of Corrections; (4) he mailed his petition in this case to the court clerk; and (5) he completed a Joint Committee on Special Claims Against the State form on July 1, 2023.

First, throughout Elliott's briefing, he continually mentions a different case—"BU-22-CV-84." The motion to dismiss transcript reveals there was discussion at the hearing that the BU-22-CV-84 case was filed under a K.S.A. 60-1501 habeas petition, was dismissed, and Elliott's motion for reconsideration was denied in January 2022. He persistently points to a discussion at this case's motion to dismiss hearing where a KDOC attorney conceded Elliott "exhausted his administrative remedies as it relates to" BU-22-CV-84's habeas petition. Elliott believes this means that he also exhausted his administrative remedies in the pending case.

Elliott, however, fails to do two things. Primarily, he does not cite any legal authority to support his proposition that exhaustion of administrative remedies in one case can carry over to a different case, even if it is true the other party concedes administrative remedies were exhausted in a separate case. He does argue that one case can satisfy the exhaustion requirements in a different case under the "[r]elates [b]ack [d]octrine." Elliott does not elaborate on this doctrine nor does he cite any authority to

9

explain this concept. But the relation-back doctrine allows an amendment to a pleading to be treated as though it was filed on the same date as the original pleading, under certain conditions. See K.S.A. 60-215(c). This doctrine does not apply here because it does not concern whether exhaustion of administrative remedies in one case can satisfy exhaustion in a wholly separate case.

Second, Elliott is incorrect that filing a health services form—no matter how many he filed—meets the statutory requirements for exhaustion of a personal injury claim. Once again, Elliott cites no legal authority to support his argument that his 32 health services request forms satisfy "any and all types of exhaustion requirements." IMPP 01-118D does not mention a health services form. See K.A.R. 44-16-104a(b) ("Each claim described in subsection [a] shall be submitted and processed in accord with the department of corrections' internal management policies and procedures."). It does state that to initiate a personal injury claim, the inmate "shall" use the property damage/loss or personal injury claim form, which is the form Elliott provided in his petition that contains no indication he delivered the form to the facility or the Secretary of Corrections. IMPP 01-118D.II.D.

Defendants point to *Lax v. Corizon Medical Staff*, No. 18-3201-SAC, 2019 WL 4450668 (D. Kan. 2019) (unpublished opinion), to support their assertion that the grievance process is separate from the medical care process. In *Lax*, an inmate filed a pro se civil rights action under 42 U.S.C. § 1983. 2019 WL 4450668, at *1. The United States District Court for the District of Kansas found the inmate failed to exhaust his available administrative remedies even though he submitted medical request forms because he "did not pursue any of these complaints regarding his conditions of confinement, including his medical care, through the grievance process." 2019 WL 4450668, at *5.

Although the *Lax* case was brought under a federal statute in federal court the sentiment is the same:  Inmates filing civil actions cannot exhaust their administrative

remedies by completing *any* complaint form or engaging in *any* process to satisfy exhaustion, it must be the right process as mandated by legal authority. See 2019 WL 4450668, at *5. Here, the appropriate process for an inmate to exhaust administrative remedies for a personal injury claim is dictated by IMPP 01-118D.II.D. This policy requires inmates to complete a property damage/loss or personal injury claim form. Although it appears Elliott partially completed this form—as he maintains in his third argument explaining why he believes he exhausted his administrative remedies—there is no indication based on the form that he ever submitted it to the warden/superintendent and the Secretary of Corrections.

At one point, Elliott claims on appeal that he filed his personal injury claim form on February 25, 2023, and that "E.D.C.F. Warden Tommy Wiiliams [*sic*], and Secretary of Corrections Mr. Jeff Zmuda each received a copy," but he provides no record support for this statement and the face of the form shows it was notarized on February 28, 2023. At another point in his brief, Elliott claims he filed the form on March 5, 2023. Again, Elliott provides no record support for this statement and the face of the form in the record has zero indication that anyone received it and processed it as required by K.A.R. 44-16-104a and IMPP 01-118D.

Further, K.S.A. 75-52,138 requires an inmate to exhaust their administrative remedies before filing any civil action naming the KDOC. Even if Elliott did file his personal injury claim form on February 25 (or March 5), he filed his lawsuit on March 9, 2023. The IMPP 01-118D gives the Secretary 30 days to investigate the claim. And if the claim is denied, the IMPP provides an administrative appeals process, which Elliott fails to show he followed before filing his lawsuit. Simply filing the personal injury claim form does not exhaust an inmate's administrative remedies—it only starts the process to do so.

11

Another argument Elliott makes regarding his second point is that his 32 health services request forms satisfy the "continuing violation doctrine." Although Elliott's argument is not clearly applied, it appears he contends that under his circumstances, "there is no possible way to distinguish the 10 day time tolling limit of K.A.R. 44-16-104a"; thus, his 32 health services request forms demonstrate he had a "continuing violation." This argument appears more directed to Defendants' arguments that Elliott did not satisfy K.A.R. 44-16-104a's 10-day time limit to file a personal injury claim, rather than whether he filed the claim form before he sued. Since, as we explain later, we offer no opinion on this deadline, we need not address Elliott's continuing violation claim.

We will note, however, that the case Elliott cites to support his argument, *Vasquez v. Davis*, 882 F.3d 1270, 1277-78 (10th Cir. 2018), declined to adopt the doctrine for 42 U.S.C. § 1983 claims but recognized it was developed for Title VII cases. See *Hunt v. Bennett*, 17 F.3d 1263, 1266 (10th Cir. 1994) ("The continuing violation doctrine permits a Title VII plaintiff to challenge incidents that occurred outside the statutory time limitations of Title VII if such incidents are sufficiently related and thereby constitute a continuing pattern of discrimination."). Elliott's 32 health services request forms do not fulfill K.S.A. 75-52,138, K.A.R. 44-16-104a, and IMPP 01-118D's exhaustion requirements, collectively, nor is the continuing violation doctrine applicable to these forms.

Fourth, Elliott argues he exhausted his administrative remedies because on February 28, 2023, he "deposited into the K.D.O.C./U.S.P.S. Mailbox the K.S.A. 60-513 (7)(c) Tort Petition, file stamped by the Court Clerk on 3/09/23." He fails to acknowledge that K.S.A. 75-52,138 "require[s] an inmate in the custody of the secretary of corrections to exhaust administrative remedies *before filing a lawsuit*." (Emphasis added.) *Sperry*, 305 Kan. 469, Syl. ¶ 6. Meaning, Elliott cannot rely on the filing of his petition as evidence of adequate exhaustion. He must have exhausted his remedies before depositing his petition in a mailbox to be filed.

12

Fifth, Elliott mentions that he filed a claim with the Joint Committee on Special Claims Against the State. He relies on *Bates v. Kansas Dept. of Corrections*, 31 Kan. App. 2d 513, 514-15, 67 P.3d 168 (2003), which interpreted K.A.R. 44-16-104 (2000) (revoked), to hold that inmate Bates had "two alternatives for exhausting administrative remedies: (1) presenting the claim to the prison; or (2) presenting the claim to the joint committee." *Chelf*, 46 Kan. App. 2d at 526 (discussing *Bates*). But, as we explain, this finding does not help Elliott.

There are two issues with Elliott using his claim that he filed with the Joint Committee as evidence of exhaustion. As *Chelf* recognized, K.A.R. 44-16-104 has been revoked and replaced with K.A.R. 44-16-104a. 46 Kan. App. 2d at 528. *Chelf* found that before June 1, 2007, when K.A.R. 44-16-104a replaced K.A.R. 44-16-104, "an inmate could present a personal injury claim to the prison *or* to the joint committee for purposes of exhausting administrative remedies, but now the inmate *must* present such a claim to the prison to properly exhaust." (Emphases added.) 46 Kan. App. 2d at 528; see also K.A.R. 44-16-104a(a), (c) (stating "[e]ach inmate claim for personal injury shall be submitted to the facility and secretary of corrections within 10 calendar days of the claimed personal injury" "whether or not the inmate files a claim with the legislative joint committee on special claims against the state"). Elliott, therefore, cannot rely on the filing of his claim with the Joint Committee on Special Claims Against the State because K.A.R. 44-16-104a requires him to file his claim to the prison to adequately exhaust his administrative remedies.

Another hurdle Elliott faces in this argument is that he provides no record citation to support his statement that he filed a claim with the Joint Committee. Although he mentions the Joint Committee several times throughout his briefing, he never provides a record citation to support his material statement that he filed such a claim. We therefore have no record evidence to support Elliott's assertion. Any material statement made

13

without a reference to the record on appeal's volume and page number "'may be presumed to be without support in the record.'" *Kansas Medical Mut. Ins. Co. v. Svaty*, 291 Kan. 597, 623, 244 P.3d 642 (2010) (quoting Supreme Court Rule 6.02[d] [2010 Kan. Ct. R. Annot. 39], now Supreme Court Rule 6.02[a][1][B][4] [2024 Kan. S. Ct. R. at 36]). But even if we took Elliott's claim at face value, he alleged that he filed his Joint Committee claim on July 1, 2023—which is after he filed his lawsuit on March 9, 2023. We fail to see how filing the claim after the lawsuit shows Elliott exhausted his administrative remedies before filing the lawsuit.

Ultimately, none of Elliott's five reasons why he exhausted his administrative remedies are persuasive. Even though he is self-represented, "pro se litigants must still follow procedural rules." *Sperry*, 305 Kan. 469, Syl. ¶ 8. As the district court told Elliott, he did not give the prison an "opportunity" to address his claims—either by denying Elliott's assertions or recognizing the injury by, for example, giving him more medical care or providing him compensation—because he "came straight to court." Elliott's failure to exhaust his administrative remedies caused Defendants to address his complaint in a district court rather than first confronting and handling his complaints through the Department of Corrections' personal injury claim process.

> 2. *Elliott's grievances did not relieve him of his obligation to exhaust his administrative remedies.*

Elliott also argues that "personal injury claims are not grievable" under K.A.R. 44-15-101a, and he should not be "required to re-exhaust the prison administrative remedy procedures repeatedly."

To begin, Elliott is correct that personal injury claims are not addressed through the grievance procedure, but he is wrong that it saves him from having to exhaust his administrative remedies. K.A.R. 44-15-101a states:

"(d) (1) The grievance procedure shall be applicable to a broad range of matters that directly affect the inmate, including the following:

(A) Complaints by inmates regarding policies and conditions within the jurisdiction of the facility or the department of corrections; and

(B) actions by employees and inmates, and incidents occurring within the facility.

(2) The grievance procedure shall not be used in any way as a substitute for, or as part of, the inmate disciplinary procedure, the classification decision-making process, the property loss or personal injury claims procedure, or the procedure for censorship of publications specified in the secretary's internal management policy and procedure."

Elliott does not explain his argument. He appears to contend that article 15's grievance procedure for inmates cannot substitute for "the property loss or personal injury claims procedure"—e.g., a medical malpractice claim. See K.A.R. 44-15-101a(d)(2). He fails to understand, however, that Kansas Administrative Regulation Agency 44 (Department of Corrections) article 15's grievance procedure is different than article 16's procedure for damaged property or for personal injury. As K.A.R. 44-15-101a(d)(2) states, personal injury claims cannot be grieved through article 15's process. These claims, however, can be assessed under article 16's procedures.

Elliott was also not required to "re-exhaust the prison administrative remedy procedures repeatedly," as he maintains. He points out that he filed two grievances that "are equally applicable in the current case matter." But the grievance procedure cannot substitute for the personal injury claims process. K.A.R. 44-15-101a(d)(2). Elliott is not required to "repeatedly" file grievances, claims, or forms; he is just required to follow the correct procedure to exhaust his administrative remedies which he did not do.

15

3. *Elliott's contention that this case should be remanded because Defendants failed to reply to his appellate motion to stay briefing is uncompelling.*

Elliott begins his reply brief by noting he filed a "Verified Motion for Temporary Stay of Appellate Review & Request for Remand." In that motion, he stated he "now realizes he should have filed a civil rights suit . . . pursuant to [K.S.A.] 60-208(a)(1)&(2), (d)(1)&(2), & (e) . . . and prosecuting the numerous 8th & 14th Amendment violations per 42 USC [§] 1983, & invoking supplemental jurisdiction for his actionable tort claims." He believed these were "innocent flaws" since "he is an amateur litigator." This court denied his motion to stay the appeal and remand the case.

In his reply brief, he complains that opposing counsels did not file a response to his motion. He believes that because of "opposing counsels combined failures to even belatedly respond or contest his verified motion[,]" he is entitled to have his case remanded. Elliott, however, does not provide a rule mandating Defendants to respond to his motion. He cites Kansas Supreme Court Rule 5.01(b) (2024 Kan. S. Ct. R. at 31) which states: "A party may serve and file a response no later than 7 days after being served with a motion." This rule expressly uses "may" instead of "must" or "shall." See *Caporale v. Kansas Behavioral Sciences Regulatory Bd.*, 50 Kan. App. 2d 1155, 1159, 338 P.3d 593 (2014) ("As our courts have noted, 'may' usually won't be considered a command unless something in the context indicates it was used that way."). Defendants were not required to respond to Elliott's motion, and their failure to do so is not grounds for reversal.

Affirmed.